FILED
08/16/2019
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 18, 2019 Session

## DANIEL HARVEY, ET AL. v. SHELBY COUNTY TENNESSEE, ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-002662-15  Rhynette N. Hurd, Judge**

_____

### No. W2018-01747-COA-R3-CV

_____

Plaintiffs filed a complaint against multiple governmental entities for flood damages to their property.  Each defendant filed a pre-trial motion to dismiss and/or a motion for summary judgment. The trial court granted judgment on the pleadings and summary judgment, finding that Plaintiffs' claims were barred by the applicable statute of limitations.  Plaintiffs appeal.  For the reasons stated herein, the decision of the trial court is affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Vacated in Part, and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and THOMAS R. FRIERSON, II, J., joined.

Ryan Simatic, Minneapolis, Minnesota, and Edward Brading, Johnson City, Tennessee, for the appellants, Daniel Harvey and Portia Harvey.

Robert B. Rolwing, Memphis, Tennessee, for the appellee, Shelby County, Tennessee.

Randall D. Noel and Gadson W. Perry, Memphis, Tennessee, for the appellee, City of Memphis.

David L. Bearman and Ryan A. Strain, Memphis, Tennessee, for the appellee, Memphis Light, Gas, and Water Division.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; James R. Newsom, III, Special Counsel; and Matthew Dowty, Assistant Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. FACTS & PROCEDURAL HISTORY[1]

Daniel Harvey and Portia Harvey ("Plaintiffs") own property east of Interstate 240 in Memphis, Tennessee. Their property, described as Lot 2 in Section B of the Sweetbriar Woods Subdivision, borders the Tennessee Department of Transportation ("TDOT") right-of-way for the interstate. Interstate 240 was originally constructed in the 1960s. As part of its original construction, an 8 feet by 6 feet concrete box culvert was installed for drainage. The culvert runs underneath the surface of the interstate and empties into a drainage ditch behind what is now Plaintiffs' property.

In the 1970s, the subdivision was developed along with its own drainage system. As part of the subdivision's drainage system, an 8 feet by 3 feet concrete box culvert was installed to "receive drainage exiting the I-240 right-of-way." The 8 feet by 3 feet culvert was not large enough to accommodate peak water flows running underneath the interstate, causing Lot 2 to flood. In the 1980s, the City of Memphis installed reinforced concrete pipe running parallel to the 8 feet by 3 feet box culvert, for "additional conveyance capacity" after storm events.

In 1997, Plaintiffs began to reside on Lot 2. Nine years later, TDOT entered into an agreement with an engineering and design firm for the development of plans for widening of the interstate. During this time, TDOT had knowledge of the preexisting deficiencies in the subdivision's drainage system. TDOT investigated the possibility of constructing a detention basin on the west side of Interstate 240 to ensure improvements made to the interstate would not worsen the flooding in the subdivision.

Memphis Light, Gas, and Water Division ("MLGW") operates and maintains electrical transmission towers and gas lines on the property west of and adjacent to the TDOT right-of-way, which is where the proposed detention basin was to be constructed. Prior to commencement of roadwork, TDOT and the engineering firm worked to design a detention basin that would comply with the requirements of MLGW. The engineering firm conducted a pre-construction study, which concluded that the proposed detention basin would be sufficient to offset any additional runoff resulting from the interstate modifications, but would not be large enough to completely alleviate the flooding in the subdivision. TDOT reviewed the study and included a detention basin in its final plan, which MLGW approved.

---

[1] The facts are largely taken from the complaint and statement of undisputed facts contained in the record, to provide a background and give context to the issues raised on appeal. Many of the facts were undisputed for purposes of the State's "Motion for Summary Judgment." However, these facts should not be considered as conclusively established on remand, for purposes of the additional proceedings involving any other defendants.

On August 18, 2009, Plaintiffs' home was "severely" flooded for the first time, after Memphis experienced heavy rain. According to Plaintiffs, the flooding caused extensive damage to their home. Plaintiffs denied experiencing any flooding from 1997 to 2009. Plaintiffs attributed the flooding to the Interstate 240 construction work, which they allege began in 2008.[2] According to Plaintiffs, they gave notice of the 2009 flooding to "the City, County, State, and MLGW." Construction of the detention basin was completed in April 2012.

Plaintiffs' property severely flooded for a second time during a period of heavy rain on January 30, 2013, again causing extensive damage. Plaintiffs reported the flood to the State (and possibly to the City, County, and MLGW). They expressed concerns that the construction on Interstate 240 contributed to the flooding. TDOT did not take any further action to address the flooding in the area or assure Plaintiffs that such action would or could be taken.

In 2013, the same engineering firm that conducted the pre-construction study for TDOT prepared a report for the City, which stated:

> Due to historic and continued flooding events which at times resulted in flood damage to the home at . . . (Lot 2, Sweetbriar Wood Subdivision, Section B), the City engaged Fisher & Arnold, Inc, to perform a storm water analysis to determine the potential for improvements to an existing detention basin located within the MLG&W Transmission Right-of-Way adjacent to and west of the I-240 right-of-way in order to maximize downstream reductions in the resulting peak flows. In hopes of mitigating the flooding issues in the Sweetbriar Woods Subdivision, Fisher & Arnold, Inc. was tasked with the following scope . . . .

The report further stated that "despite the 1980s modification . . . Lot 2 has continued to experience flooding." It indicated that the 2012 detention basin constructed by TDOT "was designed to address increased runoff from the expansion of I-240, but was not designed to address the historic flooding" in the subdivision. The primary consideration of the 2013 report was to explore options for "expanding and/or modifying the detention basin to further restrict the outflow and perhaps mitigate or at least reduce the degree of flooding," which occurs in the subdivision. The engineering firm provided two possible options to "significantly reduce the peak flows" of water in the subdivision. However, there is nothing in the record to indicate that either option was ever implemented. Plaintiffs concede, in their brief, that the 2013 Fisher & Arnold report was

---

[2] The State of Tennessee's "Statement of Undisputed Facts" indicates that roadwork began in 2011.

delivered to them on August 12, 2013.

Plaintiffs' property flooded for a third time, during a period of heavy rain, on June 29, 2014. Again, the flood caused extensive damage to the home. Plaintiffs again gave the State (and possibly the City, County, and MLGW) notice of the flooding. In July 2014, Plaintiffs had email communications with TDOT, reiterating their request for relief. TDOT officials responded, stating that their project "has not increased drainage" in the area. To the contrary, the TDOT official explained that "the detention basin operated to reduce the peak volume of water flowing into the drainage channels behind Plaintiffs' property from pre-construction levels." TDOT did not take any further action to address flooding in the subdivision and never assured Plaintiffs or other residents of the subdivision that such action would be taken.

On October 20, 2014, a neighborhood meeting was held to discuss the flooding with various governmental representatives. The aforementioned TDOT official attended the meeting, but he did not make any representation that TDOT would or could take further action to address flooding in the subdivision. According to Plaintiffs, despite the "significant drainage and flooding problems . . . Defendants failed to implement any actions to remedy the problems." In 2014 and 2015, Plaintiffs received emails from the office of Tennessee House District 83 Representative Mark White regarding their property.[3] The emails detailed steps being taken by the City and stated that efforts were being made to find a solution to improve the flooding.

On June 23, 2015, Plaintiffs filed a complaint in the trial court against the City, Shelby County, and MLGW. They asserted claims for (1) violation of Tenn. Code Ann. § 7-31-112, (2) nuisance, (3) trespass, (4) negligence, and (5) inverse condemnation. Plaintiffs alleged that they were entitled to damages as the flooding from the interstate project had "significantly" reduced the market value of the property. Shortly thereafter, the County filed a "Motion to Dismiss or in the Alternative for Summary Judgment." On June 9, 2016, an order was entered granting the County's motion. The trial court concluded that the County was an improper party and that Plaintiffs' tort claims against the County were time-barred by the statute of limitations.[4]

On October 16, 2015, Plaintiffs filed notice of claims against the State in the Tennessee Division of Claims Administration, which were later transferred to the Tennessee Claims Commission. Plaintiffs then filed a complaint for damages against the State in the Claims Commission on February 12, 2016. Plaintiffs alleged essentially the same facts that they asserted in their complaint filed in the trial court. However, they

---

[3] The emails are from the "Legislative Assistant to Representative Mark White."

[4] Plaintiffs do not challenge the dismissal of the County on the ground that it was an improper party. Therefore, the dismissal of the County is not at issue on appeal.

- 4 -

only made claims against the State for (1) nuisance, (2) negligence, and (3) inverse condemnation. In mid-2017, these claims were transferred to and consolidated with their claims in the trial court.[5]

On March 16, 2018, the City and MLGW filed motions for judgment on the pleadings. The State filed a motion for summary judgment on April 11, 2018, supporting it with a memorandum of law, affidavits, a statement of undisputed facts, and other exhibits. Plaintiffs responded to the City, MLGW, and the State's motions; however, they failed to respond to the statement of undisputed facts submitted by the State.[6]

Following arguments on the motions, the trial court granted the City and MLGW's motions, as well as the State's. As to the City and MLGW, the court held that Plaintiffs' claims for trespass, negligence, nuisance, and inverse condemnation accrued no later than 2013 and were barred by the one-year statute of limitations. Regarding the State's motion, the court found:

> . . . . [T]he undisputed facts show[ed] Plaintiffs knew or reasonably should have known of a permanent injury to their property in January 2013. Because Plaintiffs initiated this suit against the State more than one year later, on October 16, 2015, their claims against the State are time-barred under Tenn. Code Ann. § 29-16-124, and the State is entitled to judgment as a matter of law.

The trial court's final orders were entered on August 15, 2018, and August 23, 2018. Plaintiffs timely appealed.

## II. ISSUES PRESENTED

Plaintiffs present two issues for our review in an unclear question-and-answer format. We have determined the dispositive issues are:

1. Whether the trial court erred in dismissing Plaintiffs' case on motions for judgment on the pleadings and summary judgment, after it found that the claims were barred by the one-year statute of limitations; and,

2. Whether the defendants were equitably estopped from asserting a statute of

---

[5] An order transferring the claims to the trial court was filed with the Claims Commission. The date of filing is not legible, but the certificate of service on said order bears a date of August 10, 2017. A "Consent Order Accepting Transfer and Consolidating Cases" was filed with the trial court on September 8, 2017.

[6] "It is well-settled that, when a non-moving party fails to respond to the moving party's statement of undisputed facts, the court may consider the facts admitted." *Cardiac Anesthesia Servs., PLLC v. Jones*, 385 S.W.3d 530, 539 (Tenn. Ct. App. 2012) (citations omitted).

limitations defense.

For the following reasons, the decision of the circuit court is affirmed in part, vacated in part, and remanded for further proceedings.

## III. DISCUSSION

### A. The City and MLGW's Motion for Judgment on the Pleadings

Because this case involves issues which were adjudicated by both summary judgment and judgment on the pleadings, we must first examine the applicable standards of review. The trial court disposed of the claims against the City and MLGW by granting judgment on the pleadings. "In reviewing a trial court's ruling on a motion for judgment on the pleadings, we must accept as true 'all well-pleaded facts and all reasonable inferences drawn therefrom.'" *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466, 470 (Tenn. 2004) (quoting *McClenahan v. Cooley*, 806 S.W.2d 767, 769 (Tenn. 1991)). "A motion for judgment on the pleadings involves the consideration of nothing other than what its title suggests; the motion requests that a court grant judgment based on the pleadings alone." *Sakaan v. Fedex Corp., Inc.*, No. W2016-00648-COA-R3-CV, 2016 WL 7396050, at *5 (Tenn. Ct. App. Dec. 21, 2016).

In the event that the trial court considers matters other than the pleadings, the motion must be treated by the court as a motion for summary judgment. As stated in Tenn. R. Civ. P. 12.03:

> . . . If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and *not excluded* by the court, the motion *shall* be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56 . . . .

(emphasis added).

Here, various exhibits were attached to the complaint, including the engineering study, several emails, and pictures. Those attached materials were not excluded, and to the contrary, the court expressly stated that its decision was based on "the entire record." *See, e.g.*, *Mann v. Alpha Tau Omega Fraternity*, 380 S.W.3d 42, 46 (Tenn. 2012) ("In granting the motion, the trial court based its decision on 'the arguments of counsel in open court and the entire record in this cause.' By considering matters outside the pleadings, [] the trial court converted the motion to dismiss for failure to state a claim into a motion for summary judgment."); *Tennessee Firearms Ass'n v. Metro. Gov't of Nashville & Davidson Cty.*, No. M2016-01782-COA-R3-CV, 2017 WL 2590209, at *3 (Tenn. Ct. App. June 15, 2017) (reviewing the trial court's decision as a grant of

summary judgment when the trial court stated that it granted the motion to dismiss based on "the entire record in this matter").

We recognize that there are exceptions to the general rule that a court must convert a motion for judgment on the pleadings to a motion for summary judgment if the court considers evidence outside the pleadings. In *Haynes v. Bass*, No. W2015-01192-COA-R3-CV, 2016 WL 3351365, at *4–5 (Tenn. Ct. App. June 9, 2016), this Court provided a helpful summary of the relevant exceptions to this general rule and provided several examples:

> There are exceptions to the general rule, cited above, that a court must convert a Tenn. R. Civ. P 12.02(6) motion to a motion for summary judgment if the court considers evidence outside the pleadings. In *Indiana State District Counsel of Laborers v. Brukardt*, No. M2007-02271-COA-R3-CV, 2009 WL 426237 (Tenn. Ct. App. Feb. 19, 2009), the court adopted the following language:
>
>> Numerous cases ... have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; these items may be considered by the district judge without converting the motion into one for summary judgment.
>
> *Brukardt*, 2009 WL 426237, at *8 (quoting Wright and Miller, *Federal Practice and Procedure*, 1357, p. 376 (3d ed. 2004)). Applying the general rule and the exceptions, the *Brukardt* court determined that the trial court properly considered a proxy statement and a certificate of incorporation when ruling on a motion to dismiss because Tennessee law allowed for judicial notice of such public records. *Id.* at *9. The court went on to conclude that the trial court erred in considering newspaper articles and press releases as these materials were not subject to judicial notice. *Id.* The court in *Western Express, Inc. v. Brentwood Services, Inc.*, No. M2008-02227-COA-R3-CV, 2009 WL 3448747, at *3 (Tenn. Ct. App. Oct. 26, 2009), relied upon the rule stated in *Brukardt* to hold that the trial court properly considered a settlement agreement because it was a public record. More recently, in *Singer v. Highway 46 Properties, LLC*, No. M2013–02682-COA-R3-CV, 2014 WL 4725247, at *3 (Tenn.Ct.App. Sept. 23, 2014), the court applied the same exceptions in holding that the trial court did not err in considering certain public records (a quit claim deed and an LLC's articles of incorporation and annual reports) on a motion to dismiss. In *Cochran v. City of Memphis*, No. W2012-01346-COA-R3-CV, 2013 WL

1122803, at *2 (Tenn. Ct. App. Mar. 19, 2013), the City's motion to dismiss the plaintiffs' second complaint included the following exhibits: the plaintiffs' first complaint, an order dismissing the cause for lack of prosecution, and an order denying the plaintiffs' motion to set aside the order of dismissal. Citing *Brukardt*, the court determined that the City's motion should not be converted to a motion for summary judgment. *Id.* To the extent that the trial court in the present case considered the orders from the Arkansas divorce provided as attachments to the defendants' motions, the trial court did not err in failing to convert the motions to dismiss/for judgment on the pleadings to motions for summary judgment. Such materials fall within the exceptions to the general rule cited in *Brukardt*.

*Id.* at *5-6.

Again, Plaintiffs attached multiple exhibits to their complaint, none of which the trial court explicitly or implicitly excluded.  The order states in pertinent part:

. . . . In response to Plaintiffs' concerns, the City commissioned a study by engineering firm Fisher & Arnold, Inc. The study, completed in August 2013, concluded that significant modifications to the drainage could lessen, but would not eliminate, the flooding experienced by Plaintiffs.

Based on the arguments of counsel *and the entire record* . . . Plaintiffs['] . . . claims should therefore be dismissed under Tennessee Rule of Civil Procedure 12.03.

. . . .

. . . . Based on the allegations in their Complaint, Plaintiffs knew or reasonably should have known that the alleged injury to their property was permanent in 2009, when the property experienced the first flooding incident, which Plaintiffs reported to Defendants, and in no event later than 2013, either at the time of the second flooding incident in January 2013 or upon completion of the Fisher & Arnold study in August 2013.  Because the inverse condemnation claim accrued no later than 2013, the statute of limitations expired no later than 2014, and, therefore, Plaintiffs' claim, filed in 2015, is untimely.

(emphasis added) (citations omitted).

A motion for judgment on the pleadings, as we have stated, is considered based upon the pleadings alone.  In this case, we find that the trial court went beyond the scope

of review allowed. The standard set forth by this court in *Brukardt* plainly excludes from consideration some, if not all, of the exhibits attached to Plaintiffs' complaint. The trial court made no findings as to whether these exhibits were part of the record, but stated that the decision was based upon the "entire record" and directly cited to at least one exhibit. Therefore, the court was required to convert the motion for judgment on the pleadings to a motion for summary judgment.

This Court has addressed the proper procedure to follow upon a finding that a motion for judgment on the pleadings should have been treated as a motion for summary judgment. Even if we were to interpret the order as a *sua sponte* granting of summary judgment, both parties should have been "afforded a 'reasonable opportunity' to present memoranda in support of or in opposition to a motion for summary judgment along with statements of undisputed material fact and any other supporting documentation." *In re Conservatorship of Starnes*, No. W2013-02614-COA-R3-CV, 2014 WL 6977831, at *8 (Tenn. Ct. App., filed Dec. 10, 2014) (quoting *Int'l Merch. Servs., Inc. v. ATM Cent., LLC*, No. W2003-00849-COA-R3-CV, 2004 WL 170392, at *5 (Tenn. Ct. App. Jan. 27, 2004)). It is only after the court has obtained and reviewed such information that it can make an "intelligent ruling" as to whether the disputes of material fact exist and whether either of the parties are entitled to summary judgment as a matter of law. *Id.*

Based on these findings, the motions for judgment on the pleadings should have been treated as motions for summary judgment and disposed of according to Rule 56. Accordingly, we vacate the judgment of the trial court granting the City and MLGW's motions for judgment on the pleadings. We remand the case to the trial court for consideration of this motion pursuant to the standards of Rule 56, and to give all parties a reasonable opportunity to present all material pertinent thereto. Because we have determined that the decision of the trial court should be vacated and remanded, any remaining issues regarding the City and MLGW are pretermitted.

### B.    State's Motion for Summary Judgment

We next move to the issue regarding the claims against the State. The claims against the State were decided on a motion for summary judgment. Pursuant to the Rules of Civil Procedure, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. "We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness." *Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citations omitted). "In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id*. (citations omitted).

"The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact . . . ." *Martin v. Norfolk S. Ry. Co.,* 271 S.W.3d 76, 83 (Tenn. 2008) (citing *Byrd v. Hall,* 847 S.W.2d 208, 215 (Tenn. 1993)). The party moving for summary judgment may satisfy its burden of production "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264. We must view all the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Martin*, 271 S.W.3d at 84 (citations omitted).

If the moving party fails to meet its initial burden of production, the nonmoving party's burden is not triggered, and the court should dismiss the motion for summary judgment. *Id* at 83. However, once the burden shifts to the nonmoving party, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Rye*, 477 S.W.3d at 251 (citations omitted). "The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." *Id* at 265. "Thus, even where the determinative issue is ordinarily a question of fact for the jury, summary judgment is still appropriate if the evidence is uncontroverted and the facts and inferences to be drawn therefrom make it clear that reasonable persons must agree on the proper outcome or draw only one conclusion." *Richardson v. Trenton Special School District*, W2015-01608-COA-R3-CV, 2016 WL 3595563 at *5 (Tenn. Ct. App. June 27, 2016) (citing *White v. Lawrence*, 975 S.W.2d 525, 529-30 (Tenn. 1998)).

### 1. *Inverse Condemnation and Temporary Nuisance*

Plaintiffs argue that they have asserted a timely cause of action for inverse condemnation, or in the alternative, temporary nuisance.[7] They assert the trial court erred in granting the State's motion for summary judgment, as there were genuine issues of material fact in dispute regarding the State's defenses based on the statute of limitations. Often, the facts material to statute of limitations defenses are undisputed and well suited for summary judgment. *Beckwith v. LBMC, P.C.*, *No.M*2017-00972-COA-R3-CV, 2019 WL 1306201, at *2 (Tenn. Ct. App. Mar. 21, 2019) (citing *Cherry v. Williams*, 36 S.W.3d 78, 83 (Tenn. Ct. App. 2000)). "In considering a statute of limitations defense, we examine three interrelated elements: 'the length of the limitations period, the accrual of the cause of action, and the applicability of any relevant tolling doctrines.'" *Id*. (quoting *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 456 (Tenn. 2012)). Whether a claim is barred by an applicable statute of limitations is a

---

[7] Plaintiffs raised additional claims in their complaint, which were addressed and dismissed by the trial court. On appeal, Plaintiffs only assert arguments regarding inverse condemnation and temporary nuisance.

question of law. *Brown v. Erachem Comilog, Inc.*, 231 S.W.3d 918, 921 (Tenn. 2007) (citing *Owens v. Truckstops of Am.*, 915 S.W.2d 420, 424 (Tenn. 1996)).

Turning to Plaintiffs' complaint, the relief they request derives from claims for temporary nuisance and inverse condemnation. Therefore, our analysis begins by distinguishing the two causes of action. The State argues that a claim for inverse condemnation is Plaintiffs' exclusive remedy. In explaining the differences between temporary nuisance and inverse condemnation, we have stated:

> . . . . [W]hether the plaintiffs' proper cause of action was a claim for inverse condemnation, rather than a temporary nuisance claim [] has been addressed by the courts of this State on numerous occasions. A nuisance has been defined as "anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable." *Pate v. City of Martin*, 614 S.W.2d 46, 47 (Tenn. 1981). A temporary nuisance is one that "can be corrected by the expenditure of labor or money." *Id.* at 48. The determination that a "taking has occurred [, as opposed to a nuisance,] depends on the facts of each case, specifically the nature, extent and duration of the intrusion." *Burchfield v. State of Tennessee*, 774 S.W.2d 178, 183 (Tenn. Ct. App. 1988). Where the adverse effect amounts to a "taking" of property by the government, . . . [the] proper remedy is one for inverse condemnation under the eminent domain statutes. *See* T.C.A. § 29-16-123, 124; *see Pleasant View Util. Dist. v. Vrandenburg*, 545 S.W.2d 733 (Tenn. 1977); *Monday v. Knox County*, 417 S.W.2d 536 (Tenn. 1967); *Smith v. Maury County*, No. 01-A-01-9804-CH-00207, 1999 WL 675135 (Tenn. Ct. App. M.S., filed September 1, 1999).

*Peterson v. Putnam Cty.*, No. M2005-02222-COA-R3-CV, 2006 WL 3007516, at *9 (Tenn. Ct. App. Oct. 19, 2006).

A key fact "that distinguishes a claim of temporary nuisance from a taking by a governmental entity is damage to the property that is permanent in nature." *Loveday v. Blount Cty.*, No. E2011-01713-COA-R3CV, 2012 WL 3012631, at *5 (Tenn. Ct. App. July 24, 2012) (citing *Peterson*, 2006 WL 3007516, at *5-6)). In this case, Plaintiffs assert that the factual dispute arises in determining what date the "taking" actually occurred to trigger the applicable statute of limitations. The statute of limitations for "all taking claims" is codified at Tennessee Code Annotated section 29-16-124. *B & B Enters. of Wilson Cty., LLC v. City of Lebanon*, 318 S.W.3d 839, 846 (Tenn. 2010) (citations omitted). This statute provides that proceedings "shall be commenced within twelve (12) months after the land has been actually taken possession of, and the work of the proposed internal improvement begun[.]" Tenn. Code Ann. § 29-16-124. As we recently explained:

- 11 -

For the purposes of section 29-16-124, "a 'taking' occurs when the 'injury to ... property ... reasonably appears ... to be a permanent injury rather than a temporary one.'" *B & B Enters.*, 318 S.W.3d at 846 (citing *Knox Cnty. v. Moncier*, 224 Tenn. 361, 367, 455 S.W.2d 153, 156 (Tenn. 1970)). An inverse condemnation cause of action therefore accrues when the plaintiff "realizes or should reasonably realize that his property has sustained an injury which is permanent in nature." *Moncier*, 455 S.W.2d at 156; *see also Bobo v. City of Jackson*, 511 S.W.3d 14, 20 (Tenn. Ct. App. 2015) ("The occurrence of a "taking" or permanent injury within the meaning of the statute is not necessarily contemporaneous to the manifested harm about which the plaintiff ultimately complains. If sufficient facts exist to show that the plaintiff should reasonably realize that some type of permanent injury has occurred, the running of the limitation period will commence at that point.").

*Little v. City of Chattanooga*, No. E2018-00870-COA-R3-CV, 2019 WL 1308264, at *11 (Tenn. Ct. App. Mar. 21, 2019).

Our analysis also includes review of the substance of Plaintiffs' claims in this matter. Plaintiffs allege that the interstate construction performed by the State has caused their property to flood. It is undisputed that the Plaintiffs experienced three severe floods over a period of five years, the last of which occurred on June 29, 2014. When presented with the issue of whether flooding resulting from construction of public improvements is a claim for temporary nuisance or inverse condemnation, Tennessee courts have held that a claim for inverse condemnation is the exclusive remedy. *See, e.g.*, *Monday*, 417 S.W.2d at 537-38 (finding that flood damages to plaintiff's property, caused by construction of a highway, amounted to a "taking" by the county and that the exclusive remedy was a claim under the eminent domain statutes); *Burchfield*, 774 S.W.2d at 183 (reversing the trial court's award of damages for temporary nuisance when "the facts of th[e] case more nearly parallel the cases where a taking has been held to occur than those where it has not"); *Jones v. L & N R.R. Co.*, 617 S.W.2d 164, 170 (Tenn. Ct. App. 1981) (finding that the "flooding of land as a result of a public improvement is not deemed to be a nuisance, but a taking of private property for public use," rendering inverse condemnation an exclusive remedy in this context). Plaintiffs further allege another element of an inverse condemnation claim: that the flooding of their property and home "has significantly reduced the market value of the property." This also points to this injury being permanent and not temporary. We have stated that "[o]ne indication that the injury is permanent and therefore a taking is damage to the market value of the property." *Loveday*, 2012 WL 3012631, at *5 (citations omitted).

Based upon the severity of the flooding and number of times that it has occurred, and the alleged reduction in property value, we determine that the record supports only one conclusion: that Plaintiffs knew the damage to the property at issue was permanent.

- 12 -

Therefore, the State would not be liable on a nuisance theory, as Plaintiffs' exclusive remedy is an action for damages under the inverse condemnation statute.

Plaintiffs state that, if a taking occurred at all, it did not occur until June 29, 2014, the date of the last flooding. In reviewing the evidence in the light most favorable to Plaintiffs, it is clear Plaintiffs knew of the permanent injury at least by June 29, 2014, and that was the latest date that the statute of limitations on the taking began to run in regard to Plaintiffs' claims against the State.[8]  We emphasize again that "a 'taking' occurs when the 'injury to ... property ... reasonably appears ... to be a *permanent injury* rather than a temporary one.'" *B & B Enters*., 318 S.W.3d at 846 (citing *Moncier*, 455 S.W.2d at 156 (emphasis added).   Plaintiffs did not file notice of their claims against the State until October 16, 2015, which is past the one-year statute of limitations. [9]

The trial court did not err in granting summary judgment to the State on the basis that Plaintiffs' claims were time-barred.   Summary judgment is appropriate if the undisputed facts support only one conclusion.   It is clear that Plaintiffs failed to file timely claims against the State.   The trial court relied on different facts than this Court in reaching its conclusion; however, despite the reasoning, the disposition is the same. Plaintiffs did not file their claims within the applicable one-year statute of limitations. Therefore, although for different reasons, we affirm the trial court's grant of summary judgment.

### 3.  *Estoppel*

Finally, we address Plaintiffs' argument that the State is collaterally and equitably estopped from asserting a statute of limitations defense.  The State asserts that Plaintiffs have waived the issues of equitable and collateral estoppel because they failed to raise the doctrines before the trial court.  Additionally, the State argues that Plaintiffs failed to raise the issue of collateral estoppel in their statement of issues.

First, we note that Plaintiffs failed to include the issue of collateral estoppel in their "Statement of Issues."  We have repeatedly explained the necessity of complying

---

[8] We express no opinion as to whether Plaintiffs had sufficient knowledge at any earlier date because it is not necessary to do so for purposes of this opinion.  We also reiterate, the facts are largely taken from the complaint and statement of undisputed facts contained in the record.  Many of the facts were undisputed for purposes of the State's "Motion for Summary Judgment."  However, these facts should not be considered as conclusively established on remand, for purposes of the additional proceedings involving any other defendants.

[9] The Claims Commission Act "requires a written notice with basic information about the claim, and provides that the applicable statute of limitations is tolled by the filing of the notice." *Moreno v. City of Clarksville*, 479 S.W.3d 795, 804-05 (Tenn. 2015) (citing Tenn. Code Ann. § 9-8-402).  Accordingly, the notice must be given "within the time provided by statutes of limitations applicable by the courts for similar occurrences from which the claim arises[.]"  Tenn. Code Ann. § 9-8-402(b).

with the Rules of this Court and the importance of properly drafted issues, to prevent waiver. *See, e.g.*, *Cartwright v. Jackson Capital Partners,* 478 S.W.3d at 615-16 (explaining that an issue that is not included in the statement of issues presented for review is not properly before the appellate court). We have emphasized that "[c]ourts have consistently held that issues must be included in the Statement of Issues Presented for Review as required by Tennessee Rules of Appellate Procedure 27(a)(4)" to be properly before the Court of Appeals. *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001). Therefore, we deem the issue of collateral estoppel to be waived and without merit.

Next, we turn to the issue of equitable estoppel. Plaintiffs argue in their reply brief that they "apprised" the trial court of their equitable estoppel claim, and thus have not waived the issue. The only record citation they provide for this contention is their response in opposition to the County's motion to dismiss or in the alternative for summary judgment.[10] However, Plaintiffs do not provide any references to the record where the doctrine of equitable estoppel was affirmatively asserted by name against any of the other defendants. In their argument against waiver, Plaintiffs rely on the Supreme Court decision in *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141 (Tenn. 2001), which held that the trial court erred by failing to consider the doctrine of equitable estoppel when a party had discussed "all the relevant facts before the trial court" but simply failed to properly label the defense as equitable estoppel. *Fahrner*, 48 S.W.3d at 143 n.1. The Supreme Court explained that the decision was not "inconsistent with the waiver approach followed in *Alexander v. Armentrout* 24 S.W.3d 267 (Tenn. 2000).*" Id.* In *Alexander v. Armentrout*, the Court held that the defendant's failure to raise the defense of equitable estoppel during the trial court proceedings constituted a waiver of that issue for the purposes of appeal.

From our review of the record, the State filed a motion for summary judgment, to which Plaintiffs responded without submitting any additional evidence. Their response did not explicitly assert the doctrine of equitable estoppel, but did contain some factual allegations upon which they now base their argument regarding equitable estoppel. In response to the motion for summary judgment, Plaintiffs only referenced these facts in an effort to demonstrate that the taking of their property was temporary rather than permanent, and they never argued that the statute of limitations should be tolled under an equitable tolling doctrine such as equitable estoppel. At the hearing on the State's motion for summary judgment, Plaintiffs again did not raise the doctrine of equitable estoppel by name, but referenced some of the same factual allegations.[11]

---

[10] We note that the Order disposing of all claims against the County was filed by the trial court on June 9, 2016. However, the State was not a party to the trial court litigation until more than one year later.

[11] From review of the transcript, although separate orders were entered, the hearings on the motions filed by the City, MLGW, and the State were combined. Confusingly, Plaintiffs' arguments appeared to overlap and apply to all motions.

- 14 -

In any event, Plaintiffs have failed to demonstrate that equitable estoppel should toll the running of the statute of limitations for their claim against the State. This Court has discussed the doctrine of equitable estoppel, stating:

> To successfully invoke the doctrine of equitable estoppel, a plaintiff must establish the following elements with respect to the party against whom the plaintiff asserts the doctrine: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts. *Equity Mortg. Funding, Inc. of Tennessee v. Haynes,* No. M2011-01717-COA-R3[-]CV, 2012 WL 982958 (Tenn. Ct. App. 2012) (perm. app. denied Aug. 15, 2012). Accordingly, in order to apply equitable estoppel, the opposing party must have either concealed material facts or made a false representation of material "facts, either past or present." *Consumer Credit Union v. Hite,* 801 S.W.2d 822, 825 (Tenn.Ct.App.1990).

*Boyce v. LPP Mortg. Ltd.*, 435 S.W.3d 758, 771-72 (Tenn. Ct. App. 2013). "Equitable estoppel is premised on the defendant's wrongdoing, and, consequently, the plaintiff must be given the time during which the defendant misled the plaintiff so that plaintiff's entitlement to the full statutory time period is preserved." *Fahrner*, 48 S.W.3d at 146.

Plaintiffs have provided no proof that the doctrine of equitable estoppel factually applies to the State. There is no proof that the State engaged in any conduct which amounted to a false representation or concealment of material facts, or, which was calculated to convey the impression that the facts were otherwise than, and inconsistent with, those which the party subsequently attempts to assert. The undisputed facts indicate the State never made any assurances or promises to Plaintiffs. To the contrary, TDOT officials denied that the interstate project contributed to Plaintiffs' flooding. Further, Plaintiffs concede that no action was taken by the State to remedy the flooding problem.

Further, the Tennessee Supreme Court has held that equitable estoppel "only applies when the defendant has taken steps to specifically prevent the plaintiff from timely filing his complaint (as where he promises not to plead the statute of limitations)." *Fahrner*, 48 S.W.3d at 146. Again, there is no proof that the State took any steps to prevent plaintiffs from filing their complaint, or to delay in filing their complaint. Therefore, we decline to conclude that the doctrine of equitable estoppel is applicable in regard to the claims against the State in this case.

Based upon the foregoing, we deem the issues involving the doctrines of equitable and collateral estoppel to be waived and without merit.

## IV.    CONCLUSION

For the aforementioned reasons, the decision of the circuit court is affirmed in part, vacated in part, and remanded for further proceedings. Costs of this appeal are taxed equally to the appellants, Daniel Harvey and Portia Harvey, and to the appellees, City of Memphis and Memphis Light, Gas, and Water Division for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE